IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTHA ANN SKAGGS, ) | CIVIL NO. 10-00247 JMS/KSC |
| ) | |
| Plaintiff, ) | ORDER (1) GRANTING IN PART |
| ) | AND DENYING IN PART BAC |
| vs. ) | HOME LOANS SERVICING, LP'S |
| ) | MOTION TO DISMISS; AND |
| HSBC BANK USA, N.A., and BAC ) | (2) DENYING HSBC BANK USA, |
| HOME LOANS SERVICING, LP, ) | N.A.'S MOTION TO DISMISS |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER (1) GRANTING IN PART AND DENYING IN PART BAC HOME LOANS SERVICING, LP'S MOTION TO DISMISS; AND (2) DENYING HSBC BANK USA, N.A.'S MOTION TO DISMISS**

**I. INTRODUCTION**

On April 28, 2010, Plaintiff Martha Ann Skaggs ("Plaintiff") filed this action against Defendants BAC Home Loans Servicing, LP ("BAC") and HSBC Bank USA, N.A. ("HSBC") (collectively, "Defendants") alleging state law claims against both Defendants stemming from Plaintiff refinancing the mortgage loan on her residence, and a claim for violation of the Real Estate Settlement and Procedures Act ("RESPA") against BAC.

Currently before the court are HSBC's and BAC's Motions to Dismiss, in which they argue that Plaintiff has failed to state a claim upon which relief can be granted. Based on the following, the court GRANTS in part and

DENIES in part BAC's Motion to Dismiss, and DENIES HSBC's Motion to Dismiss.

## II. BACKGROUND

**A.     Factual Background**

As alleged in the First Amended Complaint ("FAC"), on June 26, 2006, Plaintiff refinanced the mortgage loan on her residence with Home 123 Corporation ("Home 123"), and the bulk of Plaintiff's claims stem from the consummation of this transaction.  For example, Plaintiff asserts, among other things, that Home 123 and its representative, Romeo Anacan ("Anacan"): (1) falsely represented to Plaintiff that refinancing would not result in a prepayment penalty when it in fact resulted in a $9,000 penalty payment, FAC ¶¶ 11-12; (2) falsely represented that the new loan was a normal fixed rate loan with lower payments than her existing loan when in fact the interest rate and monthly payments were higher and she was obligated to make a balloon payment after thirty years, *id.* ¶¶ 14-15; (3) required Plaintiff to sign the closing papers despite knowing that Plaintiff was incompetent and incapable of understanding the terms due to the post-surgery pain medication she was taking, *id.* ¶¶ 16-18; (4) did not allow Plaintiff to read the loan documents due to "time pressure," simply told Plaintiff where to sign, and did not explain the documents to her, *id.* ¶¶ 21, 26;

2

(5) misstated Plaintiff's employment income as $9,000 per month even though she had no employment income at the time, *id.* ¶¶ 31, 32; and (6) did not provide Plaintiff copies of the loan documents when executed and instead mailed only some of them ten days later. *Id.* ¶¶ 22-23.  Upon receiving the loan documents in the mail, Plaintiff asked to cancel the loan, but Anacan responded that she was too late to cancel. *Id.* ¶¶ 28-29.

According to the FAC, HSBC is the current owner and holder of the note and mortgage, while BAC is its current servicer. *Id.* ¶¶ 35-36. On April 29, 2010, Plaintiff's attorney notified BAC via letter that Plaintiff disputed the amount owed on the mortgage loan and that this letter is a qualified written request ("QWR") pursuant to RESPA seeking the following information:

> 1.  The full name, address, and telephone number of the current holder of this debt, including the name, address, and phone number of any trustee or fiduciary;
> 2.  A copy of any and all documents assigning the note to its owner or owners;
> 3.  A complete and itemized statement of the loan history from the date of the loan to the date of this letter, including but not limited to the dates, amounts, and purpose of each debit and credit;
> 4.  The payment dates, purpose of payment and recipient of all escrow items charged to this account since GMAC took over the servicing; [and]
> 5.  An explanation of the meaning of and reason for all "principal curtailment" and "principal

curtailment reversal" entries.

*Id.* Ex. F. On May 7, 2010, Plaintiff received a letter from Bank of America's ("BOA") customer service, stating that "[i]n order for [BOA] to complete its research of your concerns, we will require written authorization from your client allowing [BOA] to release loan information to your office." *Id.* Ex. G. The FAC asserts that BAC failed to respond to Plaintiff's QWR and improperly responded to both oral and written requests for information regarding the current owner of the note and mortgage by, among other things, stating that Wells Fargo was the current owner. *Id.* ¶¶ 69-70.

**B.     Procedural Background**

Plaintiff filed her Complaint on April 28, 2010, and filed her FAC on May 25, 2010. The FAC alleges claims for violation of Hawaii Revised Statutes ("HRS") Ch. 480 (Count I), unconscionability (Count II), breach of fiduciary duty (Count III), fraud and misrepresentation (Count IV), unlicensed brokering (Count V), and violation of RESPA (Count VI).

On October 13, 2010, HSBC and BAC filed the present Motions to Dismiss. Plaintiff filed Oppositions on December 8, 2010, and HSBC and BAC filed Replies on December 13, 2010. A hearing was held on December 20, 2010.

## III.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  *Id.* at 1950.

///

///

## IV. **DISCUSSION**

**A.     BAC's Motion**

BAC argues that Counts I and II of the FAC all relate to the origination of the mortgage loan and therefore do not state a claim against BAC, who is only the mortgage loan's servicer.[1]  BAC further argues that Count VI fails to state a RESPA violation because BAC timely responded to Plaintiff's requests. The court addresses each of Plaintiff's claims in turn.

### 1.     *Violation of HRS Ch. 480 (Count I)*

Count I asserts a claim for violation of HRS Ch. 480 based on conduct stemming from the consummation of the loan transaction.  Specifically, Count I alleges:

> 48.     The false representations as to the terms of the loans as well as Plaintiff's income, the failure to give documents timely, and the excessive charges in connection with the above-described extensions of credit were immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs [sic] as consumers, in violation of H.R.S. Chapter 480.
> 49.     The failure to give to Plaintiff a proper and timely Notice of Right to Cancel is unfair and deceptive, in violation of H.R.S. Chapter 480.

These allegations fail to assert any misconduct by BAC and therefore do not state a

---

[1] BAC made this argument as to Counts I through V, but Plaintiff clarified in her Opposition that only Counts I, II, and VI apply to BAC.  *See* Pl.'s Opp'n 2.  During the hearing, Plaintiff further clarified that Count VI is directed to BAC only.

claim against BAC for violation of HRS Ch. 480.

In opposition, Plaintiff argues that BAC violated HRS Ch. 480 by providing incorrect information to Plaintiff about the owner of the note and mortgage, failing to provide documents, and refusing to respond to Plaintiff's counsel's April 29, 2010 request for information on the loan. Pl.'s Opp'n at 7-8. No such allegations, however, are asserted in the FAC as violating HRS Ch. 480. The court therefore GRANTS BAC's Motion to Dismiss as to Count I.

### 2. *Unconscionability (Count II)*

In support of Plaintiff's claim for unconscionability (Count II), the FAC asserts:

> 52. Home has engaged in unconscionable behavior and acts to the detriment of Plaintiff, including but not limited to obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges, by failing to give Plaintiff required documents in a timely manner, and by failing to take action to rescind the loans and mortgages.

Like Count I, Count II fails to allege any misconduct by BAC and therefore fails to state a claim for unconscionability against BAC.

In opposition, Plaintiff again asserts that this claim is based on BAC's failure to provide information, provision of incorrect information, and refusal to recognize Plaintiff's QWR. Pl.'s Opp'n 8-9. The FAC, however, fails to include

such allegations. Further, even if Plaintiff included such allegations in the FAC, they would not state a claim for unconscionability. A claim for unconscionability[2] is asserted to prevent the enforcement of a contract whose *terms* are unconscionable. The Hawaii Supreme Court has explained:

> The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power.

*Lewis v. Lewis*, 69 Haw. 497, 501, 748 P.2d 1362, 1366 (1988) (quoting comment to HRS § 490:2-302). Plaintiff's suggested additional facts are not directed to any contract terms between BAC and Plaintiff, but rather directed to conduct that occurred well after Plaintiff signed the mortgage and note. These additional facts would therefore not state a claim for unconscionability against BAC. The court GRANTS BAC's Motion as to Count II.

---

[2] BAC argues that unconscionability is not a standalone claim. Although some courts have found that unconscionability is a defense and not an affirmative claim for relief, *see, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); *Carey v. Lincoln Loan*, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."), at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission. *See Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006).

### 3. Count VI

RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request[3] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . ." 12 U.S.C. § 2605(e)(1)(A). "Servicing" is defined as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). After receiving the QWR, within sixty days, the loan servicer must either correct the borrower's account or, after conducting an investigation, provide the borrower with a written explanation of: (1) why the servicer believes the account is correct; or (2) why the requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2).

---

[3] A qualified written request is defined as:
> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that:
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1) (B).

On April 29, 2010, Plaintiff's counsel requested information on Plaintiff's mortgage, including, among other things, the holder of the note and the loan history. FAC Ex. F. In response, BOA stated that it required written authorization from Plaintiff before it released information to Plaintiff's counsel. *Id.* Ex. G. After this exchange, counsel for Plaintiff and counsel for BAC apparently had some discussions in which Plaintiff's counsel was provided incorrect information regarding the identity of the holder of the note. *Id.* ¶ 70. Counsel for BAC later corrected this error, explaining that the note "has been owned by HSBC and serviced by Countrywide Home Loans Servicing, LP nka BAC Home Loans Servicing LP since December 2006." BAC Mot. Ex. 1.[4]

BAC argues that Plaintiff has failed to state a RESPA violation. The court disagrees. Although the parties dispute whether BAC could properly require Plaintiff's counsel to establish authorization, it is clear from the various correspondence and allegations that at some point during their interactions, BAC acknowledged that Plaintiff's counsel had authorization. Further, although

---

[4] BAC asserts that the court may consider this exhibit without converting the motion into one for summary judgment because Plaintiff's claim depends on its contents. *See* BAC Mot. 6 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). It does not appear that the FAC actually depends on the contents of this email, but in any event, the existence of this letter would not change the court's analysis. RESPA requires that in response to a borrower inquiry, a loan servicer must provide information regarding the servicing of the loan. 12 U.S.C. § 2605(e)(1)(A). RESPA does not require that a loan servicer provide information on the holder of the note. Accordingly, this letter is irrelevant to Plaintiff's RESPA claim and the court does not convert BAC's Motion to Dismiss into one for summary judgment.

Plaintiff's counsel's request for information regarding the holder of the note is not the proper subject of a QWR (which is limited to seeking information on servicing of the mortgage loan), Plaintiff's counsel also sought information regarding servicing and it does not appear that BAC provided either Plaintiff or her counsel this information within the sixty-day statutory window.  The court therefore DENIES BAC's Motion to Dismiss the RESPA claim.

**B.     HSBC's Motion**

HSBC argues that Plaintiff's claims against it (Counts I through V) are based solely on misconduct by Home 123 and must be dismissed because HSBC is a holder in due course of the mortgage note.  As a holder in due course, HSBC asserts that it takes the mortgage note free of all but only a few defenses enumerated in HRS § 490:3-305(a), which Plaintiff cannot establish.  Based on the following, the court finds that even if HSBC is a holder in due course,[5] Plaintiff has

---

[5] Under Hawaii law, a note holder is a holder in due course if:
(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the

(continued...)

asserted facts supporting defenses that she may raise against a holder in due course.

A holder in due course's right to enforce the note is subject to several defenses, including:

> (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings.

HRS § 490:3-305(a)(1).

Plaintiff has asserted facts supporting defenses for lack of legal capacity, illegality of the transaction, and fraud. For the defense of lack of legal capacity, the FAC asserts that Plaintiff was taking "pain medication including, but

---

[5](...continued)
>> instrument described in section 490:3-306, and (vi) without notice that any party has a defense or claim in recoupment described in section 490:3-305(a).

HRS § 490:3-302.

The parties dispute whether the court may presume from the FAC that HSBC is a holder in due course -- the FAC merely alleges that "HSBC is the current owner and holder of the above described note and first mortgage and has been the owner and holder since December of 2006," FAC ¶ 35, and there are no allegations suggesting that HSBC is not a holder in due course. Although some courts have found that a note holder is presumed to be a holder in due course absent any allegations to the contrary, *see Robbins v. Walker*, 2008 WL 4635374, at *5 (S.D. Miss. Oct. 17, 2008); *In re Woodsbey*, 375 B.R. 145, 150 (Bkrtcy. W.D. Pa. 2007), the court need not determine this issue -- as explained below, Plaintiff's claims against HSBC stand even if the court assumes that HSBC is a holder in due course.

not limited to, Oxycodone," after having surgery on June 21, 2006. FAC ¶ 16. The FAC alleges that as a result, Plaintiff was "incompetent to enter [] the subject transaction and incapable of understanding the terms of her loan and making reasonable decisions about the loan." *Id.* ¶ 18. Accepting these allegations as true -- as the court must for purposes of HSBC's Motion to Dismiss -- Plaintiff has asserted a defense of lack of legal capacity.

In opposition, HSBC argues Plaintiff's allegations do not meet the standard[6] for lack of legal capacity because pain medications cannot render an individual incompetent and the other allegations of the FAC establish that Plaintiff knew what was happening when she signed the mortgage note. HSBC Mot. 13-14. These arguments are not persuasive -- HSBC cites no support for the proposition that pain killers can never incapacitate an individual,[7] and how the pain medications affected Plaintiff and her understanding of the mortgage are issues of

---

[6] HSBC suggests that the standard for determining legal capacity is found in HRS § 560:5-401(2)(A), which allows a court to appoint a conservator for the estate and affairs of an individual who is shown by clear and convincing evidence to be "unable to manage property and business affairs effectively because of an impairment in the ability to receive and evaluate information or to make or communicate decisions." HSBC fails to provide any support, however, for the proposition that this standard for conservatorship applies in all instances for determining lack of legal capacity. The court therefore declines to adopt this standard at this time.

[7] The only case HSBC cites in support of its argument that pain killers cannot render an individual incompetent is *Deverman v. Deverman*, 2009 WL 2869971 (N.J. Super. A.D. Sept. 9, 2009), which found that the plaintiff's evidence and testimony did not establish incompetency. *Deverman* is therefore not persuasive on this motion to dismiss.

fact that cannot be resolved on a motion to dismiss.

For the defense of illegality of the transaction, HRS § 480-12 renders any contract in violation of Ch. 480 "void and [] not enforceable at law or in equity," and the FAC asserts that Home 123 violated HRS Ch. 480 through Anacan's "false representations as to the terms of the loans as well as Plaintiff's income, the failure to give documents timely, and the excessive charges in connection with the [] extensions of credit." FAC ¶ 48. Accordingly, based on the allegations in the FAC, the mortgage note may be void pursuant to HRS § 480-12 and Plaintiff can assert this defense against a subsequent holder such as HSBC. *See also Rundgren v. Bank of N.Y. Mellon*, 2010 WL 4066878, at *6 n.6 (D. Haw. Oct. 14, 2010) ("The court recognizes that Plaintiffs may assert a Chapter 480 claim for rescission against a subsequent assignee."); *Beneficial Haw., Inc. v. Kida*, 96 Haw. 289, 312, 30 P.3d 895, 918 (2001) ("When a statute requiring a license declares void contracts 'made' by an unlicensed person, the violation of the statute is a defense to enforcement of the instrument even against a holder in due course.").

In opposition, HSBC asserts that to allow § 480-12 to void a contract against a holder in due course would improperly expand the limited defenses enumerated in HRS § 490:3-305(a)(1). *See* HSBC Reply 6-7. HSBC ignores,

however, that HRS § 490:3-305(a)(1)(ii) allows an obligor to raise the defense of "illegality of the transaction which, *under other law*, nullifies the obligation of the obligor." (emphasis added). In other words, under § 490:3-305(a)(1)(ii), an obligor may assert the defense that the mortgage note is void and unenforceable against a holder in due course because another law (such as HRS § 480-12) renders the mortgage note void. The court therefore finds that Plaintiff has alleged facts supporting the defense of illegality of the transaction.

Finally, for the defense of "fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms," the comment to HRS § 490:3-305(a)(1)(iii) explains that it applies where the obligor did not know the essential terms of the agreement and did not have a reasonable opportunity to learn them:

> Subsection (a)(1)(iii) refers to "real" or "essential" fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that the signature on the instrument is ineffective because the signer did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms. The test of the defense is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable

>opportunity to obtain knowledge.  In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the intelligence, education, business experience, and ability to read or understand English of the signer.  Also relevant is the nature of the representations that were made, whether the signer had good reason to rely on the representations or to have confidence in the person making them, the presence or absence of any third person who might read or explain the instrument to the signer, or any other possibility of obtaining independent information, and the apparent necessity, or lack of it, for acting without delay.  Unless the misrepresentation meets this test, the defense is cut off by a holder in due course.

The FAC alleges sufficient facts to support a fraud defense pursuant to § 490:3-305(a)(1)(iii).  Specifically, the FAC asserts that Anacan misrepresented essential terms of the mortgage loan (for example, the interest rate and that there was no prepayment penalty), and did not disclose the balloon payment.  FAC ¶¶ 11-15.  The FAC further asserts that Anacan (1) knew that Plaintiff had recently undergone surgery and was taking pain medication; (2) told Plaintiff that the loan documents needed to be signed that day and they had less than a half hour to complete them, (3) did not allow Plaintiff to read the documents and instead simply told her where to sign, and (4) told Plaintiff that she could rely on him and the loan was as promised.  *Id.* ¶¶ 17, 19-21.  These allegations support both that Plaintiff did not know essential terms of the mortgage note and did not have a reasonable opportunity to learn them before signing.

In opposition, HSBC argues that this defense is narrowly construed and should not be applied to an individual who simply failed to read the document yet had a reasonable opportunity to do so.[8] The FAC, however, asserts facts that suggest Plaintiff did not have a reasonable opportunity to determine the terms of the mortgage loan. The court therefore finds that Plaintiff has alleged sufficient facts to support this defense.

In sum, the court DENIES HSBC's Motion to Dismiss.

///

///

///

///

///

///

///

///

---

[8] Although HSBC cites numerous cases rejecting this defense, all of these cases rejected the defense only after the party was given an opportunity to present evidence. *See, e.g.*, *In re Joe Sipala & Son Nursery Corp.*, 214 B.R. 281 (Bkrtcy. E.D.N.Y. 1997) (summary judgment)*; New Bedford Inst. for Sav. v. Gildroy*, 634 N.E.2d 920 (Mass. App. 1994) (bench trial); *State Bank of Albany v. Roarke*, 91 A.D.2d 1093 (N.Y. App. 1983) (summary judgment); *Burchett v. Allied Concord Fin. Corp.*, 396 P.2d 186 (N.M. 1964) (discussing expert evidence); *Universal C. I. T. Credit Corp. v. Cyr*, 200 A.2d 213 (Me. 1964) (jury verdict). These cases are therefore not helpful in determining whether Plaintiff's allegations are sufficient to assert this defense.

## V.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part BAC's Motion to Dismiss, and DENIES HSBC's Motion to Dismiss.  Count VI of the FAC remains against BAC, and Counts I through V remain against HSBC.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 22, 2010.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Skaggs v. HSBC Bank USA, N.A., et al*, Civ. No. 10-00247 JMS/KSC, Order (1) Granting in Part and Denying in Part BAC Home Loans Servicing, LP's Motion to Dismiss; and (2) Denying HSBC Bank USA, N.A.'s Motion to Dismiss